# EXHIBIT 10



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE SECRETARY

January 7, 2019

*Transmitted by e-mail only*
Jonathon C. Glass
Katherine Lee Casey
Cooley LLP
1299 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C. 20004-2400

**Re: Reorganization of the Art Institutes and South University**

Dear Jonathon and Kate:

I am writing in response to your letter to me dated December 31, 2018 ("December 31st Letter") on behalf of Studio Enterprises, LLC ("Studio") and Candlewood Special Situations Master Fund II, L.P. ("Candlewood") and their proposed plans to facilitate a transfer of nine campuses of the Art Institutes ("AI") and eight campuses of South University ("South")[1] to new ownership that is separate from and not affiliated with the existing ownership under Dream Center Foundation, Dream Center Education Holdings, LLC ("DCEH") or any of its officers, board members, or senior management. (Studio and Candlewood are hereinafter collectively referred to as the "Reorganization Parties"). The campuses included in the proposed reorganization are referred to as "the Ongoing Schools" in the December 31st Letter, and the same reference is used herein. The Reorganization Parties have advised that the reorganization will be accomplished by substituting an existing nonprofit entity for DCEH as the member of the existing AI and South nonprofit entities, with a near term name change for all of the entities in accordance with the applicable state law and accreditor requirements.

In your prior letter dated December 22, 2018, you noted that as a result of landlord issues, the reorganization plan at that time did not include three other AI campuses, which had been identified in our December 20th meeting as Hollywood, Las Vegas and Dallas. The plan set forth in the December 31st Letter includes Dallas, but does not include Hollywood or Las Vegas.[2]

---

[1] These AI and South campuses are identified on Attachment A of the December 31st Letter, and the Reorganization Parties have not requested an immediate realignment of the campuses. December 31st Letter at 1.

[2] The reorganization plan set forth in the December 31st Letter continues to exclude Las Vegas, which is a separate OPEID and will remain with DCEH.

Because Hollywood is an additional location of an OPEID that is part of the reorganization plan, the Reorganization Parties must provide a teach out plan for the Hollywood campus. The Reorganization Parties must also provide teach out plans for any other additional locations of any of the AI or South main campuses that are part of the reorganization that are not going to continue in operation following the transfer to the new nonprofit entities.

The Reorganization Parties must also identify any campuses that are included in the reorganization that it may close over the next 24 months, whether those plans are firm or tentative.

The December 31st Letter requests the Department's separate consideration of AI-San Diego, which is currently an additional location of Argosy University, but which had previously been a free-standing main campus. As discussed previously with the Reorganization Parties, AI-San Diego cannot be transferred outside of its main campus until it is approved by the appropriate states and accreditor to become an additional location of another main campus that is part of the reorganization. The Department will continue to work with the Reorganization Parties to explore options for bringing AI-San Diego within the reorganized structure as an additional location of AI-Houston, Miami, Atlanta or Seattle.

The December 31st Letter also addresses the remaining Argosy campuses, and the Department appreciates the Reorganization Parties' willingness to consider options for including those campuses within the reorganization. Since the December 31st Letter, however, we have concluded that there is no reasonable path forward at the present time for transitioning Argosy as a part of the immediate reorganization, and I have previously communicated that conclusion to you.

The following is the Department's response to the requests set forth at pages 3 and 4 of the December 31st Letter. This response letter does not address any other conditions that may be imposed following the Department's full review of the transaction and all related documentation (including transition and managed servicing agreements[3]), the reorganization structure and its planned governance. Nor does it address or respond to the requested conditions set forth in your December 22nd letter, except for those specifically included in your December 31st letter. A full review will be completed by the Department prior to its final approval of the change of ownership and nonprofit status of the Ongoing Schools.

Please note that Ongoing Schools cannot be approved as nonprofit institutions for Title IV purposes (*see* 34 C.F.R. § 602 (definition of nonprofit)) until the change in ownership and nonprofit status are approved by the institutions' accreditors and all states in which the Ongoing Schools are located, in addition to the required 501(c)(3) status of the first level entities and any member or parent. Assuming that the appropriate IRS, state and accreditor approvals are received, and the terms of the services agreement (referred to in No. 13 of your December 22, 2018 letter) are acceptable to the Department, the Department does not see any current impediment to approval of nonprofit status for the Ongoing Schools when a final decision on the change of ownership application is issued. The Temporary Program Participation Agreements

---

[3] The terms of the servicing agreements will be a material consideration for the Department in its review of the nonprofit status of the Ongoing Schools.

("TPPPAs") that will be issued after the closing of the transaction will permit the continued participation of the institutions in the Title IV programs under their current status.

**Response to requested Conditions for AI and South:**

1. Assuming compliance with the requirements of 34 C.F.R. § 600.20(g), including with regard to financial statements (as further described below) the Department will use all reasonable efforts to issue TPPPAs as promptly as possible.

2. The Department does not anticipate any interruption of the flow of Title IV funds to students at the Ongoing Schools, so long as the parties comply with the requirements of 34 C.F.R. § 600.20(g) and (h), including as modified or explained herein.

3. The Department will not impose HCM2 solely as a result of the change of ownership of the Ongoing Schools. However, the Department retains its right to modify funding procedures based on its normal assessment of financial responsibility and potential risk subsequent to the change of ownership and as a result of subsequent regular financial responsibility assessments or triggers. In regard to the request for the release of $15 million from the existing letter of credit proceeds, I have already advised you that the Department is not able to release those funds for use by the Ongoing Schools. The Department intends to allocate the remaining LOC Proceeds toward satisfying liabilities resulting from pre-closing conduct of AI, South and Argosy institutions, including (as described below) a specific allocation for pre-closing conduct liabilities of the Ongoing Schools. Please be advised that the Department released $4 million to DCEH in payment of Additional Funds Submission.04 and an additional $4.1 million from G-5 on December 31, 2018.

4. The Department acknowledges the commitment of the Ongoing Schools and Studio (as the managed services provider) to ensure that Title IV funds are being used for their intended purposes. The Department also understands this item as a request for the Department to regulate future releases of Title IV funds to the Ongoing Schools to ensure that funds are not being released to DCEH. This is something that the Reorganization Parties must work out with DCEH, because until the provisional program participation agreements ("PPPAs") are issued, Title IV funds are released to the bank account registered with G-5 for each institution. The Department has no ability to unilaterally change the bank accounts. Accordingly, the Reorganization Parties will need to reach an agreement with DCEH for DCEH to change the bank accounts registered in G-5 to accounts under the control of the Ongoing Schools, or to reach some other agreement for safeguarding the funds. However, at the present time, the Department has restricted the DCEH schools from automatic draw down of funds while remaining on HCM1. Under this process, funds are not released until the Department reviews and approves the payment requests on a case by case basis.

5. As part of the same day balance sheets to be submitted under 34 C.F.R. § 600.20(h)(3)(i) by February 28, 2019, the Department has agreed to accept supplementary information pertaining to events that occur after the Transaction Date, which (depending on the nature

3

of the supplementary information) will be factored into the Department's evaluation of whether the Ongoing Schools meet the required financial responsibility standards.

6. The Department has agreed to accept and review the financial statements of the top-level AI and top-level South entities (which were formed in January 2017) to meet the two-year financial requirement set forth in 34 C.F.R. § 600.20(g)(3)(iv). However, you have now advised me that the financial statements for January 1 – December 31, 2018 (or for the additional period in January 2019 to meet the two year requirement) cannot be prepared for submission as part of a materially complete application, or even prior to February 28, 2019. Given the exigency of the situation (and with the protection of the LOC requirements and allocations set forth below), the Department has determined that so long as the financial statements for the period beginning with the formation date and ending on December 31, 2017 are submitted as part of the materially complete application, and based upon its review of those financial statements, the Department will agree to allow submission of the second year of financials to be deferred until the audits can be completed, but no later than March 30, 2019. The Department will not issue PPPAs until it completes its review of both years of audited financial statements.

7. No further gainful employment rates or reporting will be required except for certificate and non-degree programs consistent with requirements for nonprofit institutions. The DCEH schools had passing 90/10 scores in the most recent fiscal year. In addition, the Department will not be reviewing this as a conversion transaction because the schools were previously acquired by DCEH, and that transaction constituted the requested conversion, albeit not yet finally approved by the Department. Accordingly, no additional 90/10 reporting will be required.

8. The Department's response regarding pre-closing compliance issues and liabilities is addressed below in response to the separate requests for AI and South.

9. To the extent that any Ongoing School triggers any of the financial responsibility triggers under the Borrower Defense Rule prior to the due date for submission of A-133 audits for the first fiscal year under the new structure, the Department will consider only post Transaction Date conduct when evaluating whether to increase (or require) any LOC prior to the submission of such audits. If the audited financial statements and compliance audits are not submitted when they are due, the Department will evaluate any Borrower Defense Rule triggers without regard to when the conduct occurred.

10. The Department agrees to participate in any dialogue with DOJ and the states attorney generals in regard to the EDMC Consent Agreement. However, the Department is not committing to advocating for any position which the Ongoing Schools may take in those discussions, and the Department will continue to support any provisions of the Consent Agreement reasonably necessary for the mitigation of future risk to students and taxpayers.

**Response to requested conditions for South:**

A. The Department will not relieve South from regulatory compliance issues prior to the Transaction Date. However, the Department will allocate $22 million of the existing LOC proceeds on deposit for the DCEH schools to satisfy liabilities for pre-closing conduct ("South-Allocated Proceeds") and to satisfy South's financial responsibility requirements, in lieu of requiring South to post an LOC, so long as it otherwise meets the financial responsibility requirements under the Department's regulations. The South-Allocated Proceeds shall be used to satisfy liabilities resulting from the operation of the South campuses of the Ongoing Schools by DCEH (and/or its subsidiaries). Those proceeds shall be applied as follows:

   i. first, to pay Title IV liabilities resulting from pre-closing conduct but not resulting from borrower defense claims ("South Other Title IV Claims");
   ii. second, once all South Other Title IV Claims are paid, any remaining South- Allocated Proceeds shall be used to pay pre-closing conduct borrower defense claims, up to the remaining balance of the South-Allocated Proceeds (the "Borrower Defense Cap");
   iii. liabilities resulting from South Other Title IV Claims are not capped by the amount of the South-Allocated Proceeds (or any remaining balance of those proceeds); however,
   iv. in the event any South Other Title IV Claims remain following the depletion of the South-Allocated Proceeds, the Department agrees to seek DOJ approval to relieve South from liabilities for pre-closing conduct, which relief the Department is not authorized to grant on its own.

B. The Department confirms that the 2012 open program reviews for South do not contain findings that would prevent the Department from timely issuing TPPPAs to South as described above.

**Response to requested conditions for AI:**

A. The new TPPPAs will reflect the campus alignment described in Attachment A of the December 31st Letter.

B. During the provisional period, the Department will require AI to post and maintain an LOC and will agree to limit that LOC to $6.5 million until the first year of audits are submitted under the new structure. The $6.5 LOC must be posted as a condition of issuance of the AI TPPPAs. Following the submission of the first year audits, the Department will review whether the $6.5 million LOC should be maintained at the same level or adjusted upwards or downwards, depending on enrollment or financial responsibility requirements under the Department's regulations. In addition, the Department will not relieve AI from regulatory compliance issues prior to the Transaction Date. However, the Department will match the LOC amount posted by AI by allocating $6.5 million of the existing LOC proceeds on deposit for the DCEH schools to satisfy liabilities for pre-closing conduct ("AI-Allocated Proceeds"). The AI-Allocated

Proceeds shall be used to satisfy liabilities resulting from the operation of the AI campuses of the Ongoing Schools by DCEH (and/or its subsidiaries). Those proceeds shall be applied as follows:

  i. first, to pay Title IV liabilities resulting from pre-closing conduct but not resulting from borrower defense claims ("AI Other Title IV Claims");
  ii. second, once all AI Other Title IV Claims are paid, any remaining AI-Allocated Proceeds shall be used to pay pre-closing conduct borrower defense claims, up to the remaining balance of the AI-Allocated Proceeds (the "Borrower Defense Cap");
  iii. liabilities resulting from AI Other Title IV Claims are not capped by the amount of the AI-Allocated Proceeds (or any remaining balance of those proceeds); however,
  iv. in the event any AI Other Title IV Claims remain following the depletion of the AI-Allocated Proceeds, the Department agrees to seek DOJ approval to relieve AI from liabilities for pre-closing conduct, which relief the Department is not authorized to grant on its own.

C. As noted above, The Department will continue to work with the Reorganization Parties to explore options for bringing AI-San Diego within the reorganized structure as an additional location of AI-Houston, Miami, Atlanta or Seattle.

On behalf of the Department, I wish to thank you, the Reorganization Parties and all other counsel for your collective commitment and diligence in developing and executing a plan to preserve the Ongoing Schools. We will follow-up with you with a list of required documents and information and additional instructions.

Sincerely,

Diane Auer Jones
Principal Deputy Under Secretary
Delegated to Perform the Duties of the Under Secretary and the Assistant Secretary for Post-Secondary Education

6