No. 24-775C
(Sr. Judge Bruggink)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

EDUCATION CREDITOR TRUST and
U.S. BANK TRUST COMPANY, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

MOTION TO DISMISS THE COMPLAINT

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

MARGARET J. JANTZEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 353-7994
margaret.j.jantzen@usdoj.gov

August 30, 2024                    Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................ 1

RELEVANT FACTUAL BACKGROUND .................................................................. 2

ARGUMENT ................................................................................................................ 5

      I.     Relevant Legal Standard ............................................................................ 5

      II.    Lenders Cannot State A Claim For Breach Of Contract Because There Is No Privity Of Contract With The Government .............................................. 5

      III.   Lenders Cannot State A Takings Claim That Is Independent Of Contract Claims ........................................................................................................ 9

CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Allegre Villa v. United States*,
  60 Fed. Cl. 11 (2004) ................................................................ 10

*Acceptance Ins. Co. v. United States*,
  583 F.3d 849 (Fed. Cir. 2009) .................................................... 5, 9

*Anderson v. United States*,
  344 F.3d 1343 (Fed. Cir. 2003) .................................................. 6

*Ashcroft v, Iqbal*,
  556 U.S.662 (2009) ................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................. 5

*Calapristi v. United States*,
  156 Fed. Cl. 13 (2021) .............................................................. 8

*Cienega Gardens v. United States*,
  194 F.3d 1231 (Fed. Cir. 1998) ................................................. 5, 7, 8

*Clear Creek Cmty. Servs. Dist.*
  132 Fed. Cl. 223 (2017) ............................................................ 12

*Commonwealth Edison Co. v. United States*,
  56 Fed. Cl. 652 (2003) .............................................................. 9

*Egyptian American Bank, S.A.E. v. United States*,
  861 F.2d 728 (Fed. Cir. 1988) ................................................... 6

*Hanlin v. United States*,
  316 F.3d 1325 (Fed. Cir. 2003) ................................................. 6

*Hughes Commc'ns Galaxy, Inc. v. United States*,
  271 F.3d 1060 (Fed. Cir. 2001) ................................................. 10, 12

*Integrated Logistics Support Sys. Int'l, Inc.*,
  42 Fed. Cl. 30 (1998) ............................................................... 10

*Looks Great Servs. v. United States*,
  145 Fed. Cl. 324 (2019) ............................................................ 11

ii

*Mine Detection and Dog Center v. United States,*
    170 Fed. Cl. 378 (2024) ................................................................................ 8

*PGB Hanger LLC v. United States,*
    170 Fed. Cl. 473 (2024) ..................................................................... passim

*Piszel v. United States,*
    833 F.3d 1366 (Fed. Cir. 2016) ................................................................ 10

*Prudential Ins. Co. v. United States,*
    801 F.2d 1295 (Fed. Cir. 1986) ................................................................ 10

*Sonoma Apartment Assocs. v. United States,*
    124 Fed Cl. 595 (2015) .............................................................................. 11

*Stockton E. Water Dist. v. United States,*
    853 F.3d 1344 (Fed. Cir. 2009) ................................................................ 10

*Stromness MPO, LLC v. United States,*
    134 Fed. Cl. 219 (2017) ............................................................................. 11

*Sun Oil Co. v. United States,*
    572 F.2d 786 (Ct. Cl. 1978) .................................................................. 9, 12

*Turping v. United States,*
    913 F.3d 1060 (Fed. Cir. 2019) ...................................................... 6, 7, 8, 9

*United States v. Winstar Corp.,*
    518 U.S. 839 (1996) ................................................................................... 10

## RULE

Rule 12(b)(6) .......................................................................................................... 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EDUCATION CREDITOR TRUST and          )
U.S. BANK TRUST COMPANY, *et al.,*     )
                                       )
        Plaintiffs,          )
                                       )
        v.                   )          No. 24-775
                                       )          Sr. Judge Bruggink
THE UNITED STATES,                     )
                                       )
        Defendant.           )

## MOTION TO DISMISS THE COMPLAINT

Defendant, the United States, moves to dismiss plaintiffs' Education Creditor Trust and

U.S. Bank Trust Company (Lenders) complaint (Compl.) for failure to state a claim upon which

relief can be granted.

## INTRODUCTION

Plaintiffs seek to recover some $92 million that they, along with other lenders, funded

under a credit agreement involving various lenders and a company operating post-secondary

educational institutions.  Through a series of transactions, the Department of Education received

this money as proceeds from a letter of credit drawn on to satisfy certain obligations and

liabilities   the company owed to the Government.  Although the Government and plaintiffs were

never parties together on a single contractual document implicated by these transactions,

plaintiffs seek to recover this money from the Government under breach of contract theories.

But plaintiffs identify no direct contractual relationship with the Government – either expressly,

or as otherwise evidenced by the Government's intent to be contractually bound to plaintiffs.  In

the alternative, plaintiffs allege that the same Government conduct – using letter of credit

proceeds to satisfy liabilities owed to the Government – gives rise to a Fifth Amendment takings

claim.  This also fails because any claim that may be made against the Government for the $92 million in proceeds sounds only in contract; plaintiffs can claim no property interest in that money that arises independently of the various agreements upon which they base their allegations.

**<u>RELEVANT FACTUAL BACKGROUND</u>**

The facts giving rise to this lawsuit involve a series of transactions among multiple parties that implicate various agreements and contractual documents.

EDMC is a collection of educational management companies who, for more than fifty years, operated post-secondary educational institutions across North America.  Compl. ¶¶ 1, 22. A substantial portion of EDMC's revenue came from Federal funds in the form of student aid disbursed by the Government.  *Id.* ¶¶ 5, 23.  EDMC's receipt of Federal funding was governed by program participation agreements between EDMC's various schools and the Department of Education (Department).  *Id.* ¶ 24.  One condition of funding required the schools to post financial protection  in the form of an irrevocable letter of credit equal to a percentage of funds the school had received the prior year.  *Id.* ¶¶ 5, 24.  Plaintiff Lenders are among those who participated on the letter of credit, pursuant to a credit and guaranty agreement (credit agreement), and agreed to fund the letter in the event of a draw.  *Id.* ¶¶ 6, 25-26.  The credit agreement, which was between EDMC, various lenders, and the agent, provided EDMC with loans and permitted EDMC to request letters of credit from issuing banks.  *Id.* ¶¶ 6, 25, 26, Exhibit 2.  The letter of credit at issue here was issued by BNP Paribas bank on October 12, 2006 for the benefit of the Department, and was renewed and modified many times until April 2017.

*Id.*  ¶¶ 26, 29, Exhibit 3.  Each of the lenders under the credit agreement were deemed to have purchased a participation share in the letter of credit and any draws made upon it.  *Id.* ¶ 27.

By its terms, the letter of credit could be drawn upon to satisfy any of three purposes, as determined by the Department: (1) to pay refunds of charges owed to, or on behalf of, students, (2) to cover costs to "teach out" students "enrolled at the time of the closure of" a school; and (3) to cover liabilities owing to the Department under the Higher Education Act.  *Id.* ¶ 30, Exhibit 3. Once a draw upon the letter of credit was made, the credit agreement outlined procedures for funding and making payment to the beneficiary.  BNP Paribas would immediately notify EDMC that it had honored a draw request from the beneficiary and EDMC had one business day to reimburse BNP Paribas for the amount of the draw.  *Id.* ¶ 28.  If reimbursement was not made, as happened here, the draw was treated as a loan to EDMC and the lenders to the credit agreement were required to fund their *pro rata* share of that amount to reimburse BNP Paribas.  *Id.*  BNP Paribas would be paid in full and, as plaintiffs allege, the lenders "became the parties with an economic interest in the repayment [ ] of the proceeds of the letter of credit from EDMC under the EDMC Credit Agreement."  *Id.*

BNP Paribas is not a party to this lawsuit and neither is EDMC.  Dream Center Education Holdings (Dream Center), which bought a substantial number of the schools operated by EDMC when EDMC encountered financial difficulties in 2017, is also not a plaintiff.  *Id.* ¶ 8.  But Dream Center was operating the schools when the Department made a protective draw upon the letter of credit in May 2018 because Dream Center had failed to replace the letter of credit ahead of its expiration date.  *Id.* ¶¶ 9, 10, 33, 44.  Following the protective draw, the lenders, as required by the credit agreement, funded revolving loans to reimburse BNP Paribas for the full

amount of the draw.  *Id.* ¶ 46.  Plaintiffs claim that the Department distributed a portion of the proceeds to Dream Center to cover administrative and operating expenses incurred in the operation of its schools.  *Id.* ¶ 48.  But as Dream Center continued to experience financial trouble, Education Principle Foundation stepped in as a buyer and certain operations of the schools were outsourced to Studio Enterprises.  *Id.* ¶ 12.  Plaintiffs allege that the Department still holds approximately $48 million of the letter of credit proceeds.  *Id.* ¶ 62

In 2022, plaintiff Lenders requested that the Government account for how the proceeds of the letter of credit were used, and when funds that were not used for the purposes identified in the letter of credit might be returned.  *Id.* ¶ 13.  The Department responded that the proceeds had been or would be completely exhausted.  *Id.*

Lenders allege that "over the course of years during the financial difficulties of EDMC and its successors, the Department breached its contractual obligations" under the letter of credit and Program Participation Agreements by drawing on the letter of credit and failing to use the proceeds for permissible purposes.  *Id.* ¶ 15.  Lenders allege that the Department is liable to them under either a breach of contract theory or a Fifth Amendment takings claim.  *Id.* ¶ 16.  Plaintiffs claim that this liability arises from some combination of the Program Participation Agreements and the letter of credit, the Department's understanding of how the letter of credit proceeds should be used, and the Lenders' economic and contractual interest in funding the draw on the letter of credit.

## ARGUMENT

I.    <u>Relevant Legal Standard</u>

A motion to dismiss tests the legal sufficiency of a claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).  Rule 12(b)6 requires dismissal when a complaint does not plausibly allege entitlement to relief. RCFC 12(b)(6).  To avoid dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Co. v. United States,* 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly,* 550 U.S. at 557).  The Court should dismiss if the complaint fails to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially implausible if it does not permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Allegations "that are 'merely consistent with' a defendant's liability" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Failure to support conclusions with specific facts warrants dismissal. *See id.* at 683.

II.    Lenders Cannot State A Claim For Breach Of Contract Because There Is No Privity of Contract With The Government

A claim for breach of contract against the United States requires privity of contract between the plaintiff and the United States. *Cienega Gardens v. United States,* 194 F.3d 1231, 1239 (Fed. Cir. 1998).  In other words, there must be a contract between Lender Education Creditor Trust, U.S. Bank, and the Department of Education. *Id.*  Lenders do not allege privity of contract between themselves and the United State under either an express or implied-in-fact contract.  Their claim for breach of contract must necessarily be dismissed.

The requirements for an express or implied-in-fact contract are identical; only the nature of the evidence differs. *Turping v. United States,* 913 F.3d 1060, 1065 (Fed. Cir. 2019) (citing *Hanlin v. United States,* 316 F.3d 1325, 1328 (Fed. Cir. 2003)).  Under either contract theory, plaintiffs must prove (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) "actual authority" on the part of the Government's representative to bind the Government in contract.  *Id.*  A threshold condition for contract formation is proof of an "objective manifestation of voluntary, mutual assent."  *Turping,* 913 F. 3d at 1065 (citing *Anderson v. United States,* 344 F.3d 1343, 1353 (Fed. Cir. 2003)).  Nothing in the complaint establishes that the Department of Education intended to be contractually bound to Lenders.

Lenders identify a number of agreements – the letter of credit issued by BNP Paribas under which draw was made, Program Participation Agreements, and the credit agreement.  But none of these establish privity of contract between plaintiff Lenders and the United States.  And none of the allegations otherwise demonstrate an intent by the Department to be contractually bound to Lenders.  First, the letter of credit which the Department drew upon for funds was issued by BNP Paribas bank – not plaintiff Lenders.  Compl. ¶ 27, Exhibit 3, 8.  The fact that, by this draw, Lenders were "deemed to have purchased" a pro rata share in the amount of the draw, does nothing to establish privity of contract between *the Department* and Lenders.  *Id.*  In fact, when letters of credit are used, a court looks only to the terms of the letter of credit, and not the underlying contracts, in determining the duties of the issuing bank and the beneficiary.  *Egyptian American Bank, S.A.E. v. United States,* 861 F.2d 728, 729 (Fed. Cir. 1988).  As Lenders allege, their obligations with respect to the Government's draw on the letter of credit are set forth in the

EDMC credit agreement – nowhere else. And the credit agreement does not involve the Government.

For its part, the credit agreement is among EDMC, various lenders (including plaintiffs), issuing banks, and the agent, plaintiff U.S. Bank. Compl. ¶ 25, Exhibit 2. The Department is not a party to the credit agreement and no allegations suggest otherwise. Finally, the Program Participation Agreements which govern EDMC's participation in the Title IV programs and its receipt of funds from the Government are made only between the Department and EDMC schools, not Lenders. *Id.* ¶ 24, Exhibit 1. In short, there is no contractual document to which both the Department and Lenders are parties.

This multi-tiered funding mechanism involving the credit agreement, the BNP Paribas letter of credit, and the Program Participation Agreements does not create obligations by the Government to a party with whom the Government shares no direct contractual relationship. *Turping,* 913 F.3d at 1066 (citing *Cienega Gardens,* 194 F.3d at 1245 (in two-tiered contract schemes, the Government's obligations are only directed to the contractor with whom it shares a contract, and not the subcontractor with whom it shares no direct contractual relationship)). Lenders attempt to mix and match the terms of the letter of credit (under which the Department is a beneficiary), with parties to other agreements where the Department is not a party. *See, e.g.,* ¶ 10 (Department certified that the proceeds would be utilized for Permissible Uses under the terms set forth in the BNP Letter of Credit), ¶ 11 (the Department "breached the contract" by failing to apply $92 million of proceeds to "Permissible Uses"), ¶¶ 14-16 (Lenders agreed to fund the letter of credit for specific Permissible Uses and the Department is liable to them for its "breach of the agreement governing the use of the Letter of Credit Proceeds.")

7

But stringing together various agreements in connection with *some obligation* by the Government to *someone* does not demonstrate that the Government intended to be bound to Lenders in a contractual relationship.  *See Calapristi v. United States,* 156 Fed. Cl. 13, 18 (2021) (rejecting an argument that "strings together the government's conduct in connection with the [agreement] to demonstrate that the government intended to be contractually bound to employees under the [agreement].")  Such attempts have been rejected by this Court, *see id.*, and the Federal Circuit: "Absent any indicia in the contract or other evidence of the Government's specific intent to be contractually obligated to [contractor's employees] we find that privity of contract between [contractor employees] and the Government does not exist."  *Turping,* 913 F.3d at 1066.

Lenders also allege that the Department was involved with EDMC, Lenders and Dream Center in attempting to secure other letters of credit and was aware that Lenders "agreed that the BNP Letter of Credit could be utilized to satisfy Permissible Uses associated with either EDMC or Dream Center schools," despite what was reflected on the face of the letter of credit.  Compl. ¶ 38.  Lenders allege that those same parties all agreed on how to allocate existing letters of credit among the schools.  *Id.* at ¶¶ 37, 39.  But these allegations also do not demonstrate an intent by the Government to be contractually bound because the "degree of [government] involvement with a project does not create privity[ ] so as to allow suit against the government." *Turping* 913 F.3d at 1066 (citing *Cienega Gardens,* 194 F.3d at 1245); *and see Mine Detection and Dog Center v. United States,* 170 Fed. Cl. 378, 386 (2024) (expressions of intention or general willingness to do something on the happening of a particular event or in return for something to be received do not amount to an offer to show government's intent to be bound).

8

The Government only consents to be sued, through a waiver of sovereign immunity, by those with whom it has privity of contract. *Turping,* 913 F.3d at 1066. Because Lenders cannot demonstrate privity of contract with the Department, there has been no waiver of sovereign immunity on which a suit against the Department can stand.

III.    Lenders Cannot State A Takings Claim That Is Independent Of Contract Claims

Lenders allege, in the alternative, that by obtaining funds under the letter of credit for "uses that were not Permissible Uses under the contractual terms of the BNP Letter of Credit and failing to return these funds to Plaintiffs" the Government effectuated a compensable Fifth Amendment taking of private property. Compl. ¶ 81. A takings claim cannot stand because whatever property interest Lenders have in the $92 million in proceeds from the letter of credit arises, if at all, from contract alone. In other words, Lenders have no independent property interest in those proceeds beyond what has been voluntarily created by agreements. And the terms of the letter of credit and other agreements entirely govern the parties' conduct with respect to those proceeds.

A takings claim requires a two-part analysis: "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'" *Acceptance Ins. Cos.,* 583 F.3d at 854 (citations omitted). But as a general matter, "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." *PGB Hanger, LLC v. United States,* 170 Fed. Cl. 473, 481 (2024) citing *Sun Oil Co. v. United States,* 572 F.2d 786, 818 (Ct. Cl. 1978) (citations omitted); *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 656 (2003). In such cases, an

9

alleged interference with contractual rights should give rise to a breach of contract and not a takings claim. *Id.* The allegations in this complaint present the clearest case for applying this principle and dismissing Lenders' takings claim.

The Federal Circuit has explained that "[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering into contract, rather than in its sovereign capacity." *Piszel v. United States,* 833 F.3d 1366, 1376 (Fed. Cir. 2016) citing *Hughes Commc'ns. Galaxy, Inc. v. United States,* 271 F.3d 1060, 1070 (Fed. Cir. 2001) (citations omitted). And "[v]irtually *every* contract operates . . . as an assumption of liability in the event of nonperformance: The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it, --and nothing else." *Allegre Villa v. United States,* 60 Fed. Cl. 11, 18 (2004) citing *United States v. Winstar Corp.,* 518 U.S. 839, 919 (1996) (Scalia, J., concurring). Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights. *Piszel,* 833 F.3d at 1376 (citations omitted).

To be sure, Lenders are not categorically precluded here from alleging, in the alternative, a takings claim and contract claims. *See Stockton E. Water Dist. v. United States,* 583 F.3d 1344, 1368 (Fed. Cir. 2009). But to state a viable takings claim in addition to contract claims, Lenders must demonstrate that "'the right at issue is not governed by the terms of the parties' contract' or [that] the 'rights [ ] arise independently from the contract[.]'" *PGB Hanger,* 170 Fed. Cl. at 481 *citing Allegre Villa,* 60 Fed. Cl. at 18 (citing *Prudential Ins. Co. v. United States,* 801 F.2d 1295, 1300 n.13 (Fed. Cir. 1986); *and see Integrated Logistics Support Sys. Int'l, Inc. v. United States,*

42 Fed. Cl. 30, 34-35 (1998)); *see also Stromness MPO, LLC v. United States,* 134 Fed. Cl. 219, 257 (2017) (same)).

This Court has recently and repeatedly addressed this precise issue and held that "if the terms of the parties' contract govern the right at issue, the proper remedy lies in contract and not takings." *PGB Hanger,* 170 Fed. Cl. at 481 *citing Looks Great Servs. v. United States,* 145 Fed. Cl. 324, 330 (2019). The inquiry here is whether the $92 million that Lenders allege to have been taken arose solely from the various agreements between the parties involved in funding the letter of credit. *See* Compl. ¶ 4 (as a result of the Government's taking, plaintiffs seek damages of $92 million for all funds wrongfully obtained and applied for use that do not fall within the "Permissible Use" categories). It is clear that the right to the $92 million in proceeds can only be governed by contractual commitments, to the extent they exist, and has no other independent basis.

Lenders' breach of contract and Fifth Amendment takings claims arise from *identical* conduct – namely, the Department allegedly "wrongfully obtaining funds under the BNP letter of credit for uses that were not Permissible Uses under the contractual terms of [that document] and failing to return these funds to [p]laintiffs." Compl. ¶ 81. But since this conduct constitutes the entirety of Lenders' takings claim, it is readily apparent that but-for the Department's alleged breach of those contractual commitments, Lenders would not have a viable takings claim. *See Sonoma Apartment Assocs. v United States,* 124 Fed. Cl. 595, 599 (2015). The takings claim is therefore fully encompassed with the contractual claims and should be dismissed.

The only reason why the Department had $92 million in its possession is because the letter of credit issued by BNP Paribas permitted the Department to make draws upon it in those

11

amounts.  *See PGB Hanger,* 170 Fed. Cl. at 482.  Any claim to that money necessarily implicates the contractual document governing those draws and the use to which the funds are put.  *See Clear Creek Cmty. Servs. Dist.,* 132 Fed. Cl. 223, 262 (2017) (water that was taken only exists by virtue of the commercial nature of governmental action and any claim necessarily implicates the Federal contract through which plaintiff receives that water).  Indeed, Lenders' takings claim is premised on the Department's alleged non-"Permissible Use" of such funds – a term created and defined entirely by a contract document – the BNP letter of credit.  *See, e.g.*  Compl. ¶¶ 6, 11, 15, 30, 46; *and see PGB Hanger,* 170 Fed. Cl. at 484 (the contract governed all aspects of the handover and return of plaintiff's equipment making the proper remedy for any improper withholding of equipment a breach of contract claim and not a taking).   To the extent the Department made *permissible use* of the proceeds, Lenders do not allege that those funds were taken as part of a compensable Fifth Amendment claim.  In other words, the Government's alleged conduct under the breach of contract claim and the conduct giving rise to a takings claim is one and the same.

If Lenders are correct and the Department's use of the $92 million in funds drawn from the letter of credit gives rise to a takings claim, it is hard to conceive of any circumstance where a breach of contract claim involving the Government would not also be a Fifth Amendment claim.  *See PGB Hanger,* 170 Fed. Cl. at 482.  Such a conclusion runs counter to the weight of precedent cautioning against the commingling of takings compensation with contract damages.  *See Hughes Commc'ns Galaxy,* 271 F.3d at 1070 citing *Sun Oil Co.,* 572 F.2d at 818.

Finally, it makes no difference that Lenders may not prevail on a breach of contract claim here.  What is clear is that "these facts clearly allege rights arising under [various agreements]

rather than a taking under the Fifth Amendment.  It is the substance of the claim, not the label the

Plaintiff uses, that is dispositive of the question." *PGB Hanger,* 170 Fed. Cl. at 482-83.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/ Margaret J. Jantzen
MARGARET J. JANTZEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20530
Telephone:  (202) 353-7994
margaret.j.jantzen@usdoj.gov

August 30, 2024

*Attorneys for Defendant*

13